DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Thomas Conn, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation and to enter an order granting such compensation.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M), of the Tenth District Court of Appeals, this case was referred to a magistrate of this court to conduct appropriate proceedings. The magistrate has rendered a decision and recommendation which includes comprehensive findings of fact and conclusions of law. (Magistrate's Decision, Appendix A.)
 {¶ 3} The magistrate has recommended that this court grant a limited writ of mandamus ordering the commission to vacate its staff hearing officer's ("SHO") order of June 27, 2001 denying relator's PTD application, to eliminate the vocational report of vocational expert William Hyde from further evidentiary consideration, and to obtain a new employability assessment report from another vocational expert, and thereafter issue a new order that either grants or denies relator's PTD application.
 {¶ 4} Both relator and respondent Minute Men, Inc. ("Minute Men"), have filed objections to the magistrate's decision.
 {¶ 5} Relator suffered an industrial injury while employed with Minute Men, a temporary employment agency and self-insured employer under Ohio's workers' compensation laws. On the date of his injury, relator was assigned to work at Lingo Manufacturing Company, but before he had begun to perform his job duties for the day, a forklift ran over relator's left foot. Relator's claim was allowed for: "fracture left foot and toe."
 {¶ 6} Relator filed his application for PTD compensation on August 7, 2000. In support of his application, relator supplied the report of his attending physician, Richard M. Hoblitzell, M.D., who indicated that relator was unable to return to his former employment as a "factory worker."
 {¶ 7} Relator was subsequently examined at the commission's request by Ron M. Koppenhoefer, M.D. Dr. Koppenhoefer concluded that relator had reached maximum medical improvement for his allowed conditions, complained of continued foot pain when walking, needed a cane to securely walk distances, and was unable to perform his former employment as a laborer. Dr. Koppenhoefer concluded that relator was restricted to sedentary work activities and had suffered a 15 percent whole person impairment.
 {¶ 8} Dr. Koppenhoefer indicated on the occupational activity assessment form that relator's ability to sit is unrestricted and his ability to stand is between zero and three hours, as is his ability to walk. Relator's ability to lift or carry up to ten pounds, according to Dr. Koppenhoefer, is three to five hours, and from ten to 20 pounds is zero to three hours, with relator unable to lift or carry over 20 pounds.
 {¶ 9} The commission also requested an employability assessment report from William H. Hyde, a vocational expert. Hyde accepted Dr. Koppenhoefer's report and suggested various sedentary employment options such as taxicab dispatcher and assembly worker. Hyde noted that relator appeared to possess at least average "form perception, clerical perception, finger dexterity, and color discrimination." Hyde found relator demonstrated the ability to develop academic or other skills to perform entry-level, sedentary or light-duty jobs, but lacked education beyond the fifth grade level and would suffer from reduced employability due to his age of 75. Hyde also noticed that relator's work history did not include clerical, retail, or service-oriented settings.
 {¶ 10} Minute Men requested an employability assessment report from Carolyn Wolfe, a vocational expert. Noting Dr. Koppenhoefer's assessment, Wolfe noted that relator presented permanent limitations but was capable of performing driving and assembly jobs in a seated position.
 {¶ 11} Based upon this evidence, the SHO rendered an order denying relator's PTD application, relying heavily upon the vocational reports.
 {¶ 12} The magistrate's decision in the present case finds that the commission's reliance on the Hyde report was incorrect because the Hyde report is fundamentally flawed. The magistrate found that Hyde's findings were inconsistent with most of the employment options listed as being compatible with Dr. Koppenhoefer's medical restrictions or Hyde's own assessment of relator's ability to adapt to new clerical, retail and service-oriented work settings due to his lack of experience in those areas. The magistrate also noted that the SHO specifically found factually that relator completed the second grade; whereas, Hyde's vocational analysis is premised upon an earlier assessment that relator had completed the fifth grade. The difference between the two would be vocationally significant, yet the SHO's order failed to disclose or assess this discrepancy.
 {¶ 13} Finally, the magistrate noted that the commission's order concluded that, despite relator's age and limited education, he was able to engage in sustained remunerative employment and was not permanently and totally disabled. The magistrate concluded that relator's varied work history was in fact a positive factor, where it presented a limiting factor due to his lack of clerical or retail experience in light of the suggested sedentary employment in the Hyde report.
 {¶ 14} The magistrate further concluded that relator was not entitled to a full writ of mandamus under State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315, ordering the commission to grant relator's PTD application, because relator's 15 percent whole person impairment did not fit the profile for a claimant entitled to Gay relief.
 {¶ 15} Minute Men, in its objection to the magistrate's decision, argues that the magistrate incorrectly described Hyde's report as "flawed," and incorrectly described the commission's reliance on the Hyde report. In doing so, Minute Men asserts that the magistrate incorrectly focused on the contents of the Hyde report and its similarities and differences with the commission's opinion, and ignored the balance of the evidence and record that supported the commission's findings. In doing so, Minute Men argues the magistrate improperly looked beyond the existence of an abuse of discretion on the part of the commission, State exrel. Allerton v. Indus. Comm. (1982), 69 Ohio St.2d 396, and assessed the weight and credibility of the evidence, which was within the commission's discretionary power. State ex rel. Teecev. Indus. Comm. (1981), 68 Ohio St.2d 165. Minute Men also asserts that, regardless of whether relator completed the second grade or the fifth grade, both fall within the same educational bracket of "marginal education" (sixth grade level or less) under Ohio Adm. Code 4121-3-34(B)(3)(b)(ii).
 {¶ 16} We find that the magistrate correctly concluded that a comparison of the SHO's report, the commission order, and the contents of the Hyde report suggests that Hyde's list of employment options is seriously flawed and, as a result, the commission's nonmedical analysis must be viewed as similarly flawed. While Minute Men argues that this incorrectly departs from the standard set forth in State ex rel. Stephenson v.Indus. Comm. (1987), 31 Ohio St.3d 167, and State ex rel. Nollv. Indus. Comm. (1991), 57 Ohio St.3d 203, because the magistrate incorrectly looked beyond whether there was "some evidence" to support the commission's determination, either medical or vocational reports that are so internally inconsistent that they are unreliable will not constitute some evidence of relator's employability. State ex rel. Lopez v. Indus. Comm.
(1994), 69 Ohio St.3d 445; State ex rel. Taylor v. Indus. Comm.
(1995), 71 Ohio St.3d 582. Because we accept the magistrate's conclusions with respect to the Hyde report's inconsistency, the magistrate correctly concluded that the commission improperly relied on the Hyde report. Minute Mens' objection to the magistrate's decision is therefore overruled.
 {¶ 17} Turning to relator's objection to the magistrate's decision, relator argues that the magistrate excessively relied upon the 15 percent partial impairment, that the degree of impairment is not the most significant factor in view of relator's age, education and employment history, and that a writ pursuant to Gay ordering the commission to grant relator's PTD application should issue. We find no error in the magistrate's assessment of relator's right to Gay relief, and relator's objection to the magistrate's decision is overruled.
 {¶ 18} Following an independent review of the record pursuant to Civ.R. 53, we find that the magistrate has properly determined the pertinent facts and applied the relevant law thereto. We therefore adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, and having overruled Minute Men's and relator's objections to the magistrate's decision, a limited writ of mandamus will issue ordering respondent Industrial Commission of Ohio to vacate its order of June 27, 2001 denying relator's PTD application, to eliminate the Hyde report from further evidentiary consideration, and to obtain a new employability assessment report from one of its vocational experts prior to issuing a new order that either grants or denies the PTD application.
Objections overruled; limited writ of mandamus granted.
LAZARUS, P.J., and BOWMAN, J., concur.
DESHLER, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. : Thomas Conn, : Relator, : :
v. : No. 03AP-716 :
Industrial Commission of Ohio : (REGULAR CALENDAR) and Minute Men, Inc., : Respondents. :
 MAGISTRATE'S DECISION Rendered on February 23, 2004 Crowley, Ahlers Roth Co., L.P.A., and Edward C. Ahlers,
for relator.
Jim Petro, Attorney General, and Paul H. Tonks, for respondent Industrial Commission of Ohio.
Vorys, Sater, Seymour and Pease LLP, and Margaret D.Everett, for respondent Minute Men, Inc.
 IN MANDAMUS {¶ 19} In this original action, relator, Thomas Conn, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation and to enter an order granting said compensation.
Findings of Fact:
 {¶ 20} 1. On January 27, 2000, relator sustained an industrial injury while employed with respondent Minute Men, Inc. ("Minute Men"), a temporary employment agency and a self-insured employer under Ohio's workers' compensation laws. Prior to the date of injury, relator's job assignments with Minute Men generally involved factory labor. On the date of injury, Minute Men had assigned relator to work at "Lingo Manufacturing Co." The injury occurred before relator had begun to perform his job assignment that day. A forklift driver ran a forklift over relator's left foot. The industrial claim is allowed for: "fracture left foot and toe," and is assigned claim number 00-316934.
 {¶ 21} 2. Relator was 74 years of age on the date of his injury and had worked for Minute Men continuously since August 1999. Relator had been unemployed or retired from July 1992 to August 1999. Prior to this period, relator was employed with Minute Men from August 1986 to July 1992.
 {¶ 22} 3. Relator has not returned to any type of employment since the date of his industrial injury.
 {¶ 23} 4. On August 7, 2000, some six months after the industrial injury, relator filed an application for PTD compensation. In support, relator submitted a C-84 report from his attending physician Richard M. Hoblitzell, M.D. On the report, Dr. Hoblitzell indicated that relator's position of employment at the time of injury was "factory worker," and that relator was unable to return to that position of employment. On the C-84, Dr. Hoblitzell wrote:
Patient placed on permanent restrictions. Lifting less than 20 lbs. Standing-walking less then 2 hrs, per shift less than 20 minute duration.
 {¶ 24} 5. On January 12, 2001, relator was examined at the commission's request by Ron M. Koppenhoefer, M.D.
 {¶ 25} 6. In his report, Dr. Koppenhoefer notes that, on the date of injury relator was taken to a hospital emergency room where his laceration was sutured. He had additional surgery described as a "drainage procedure." In his report, Dr. Koppenhoefer wrote:
He is still having significant pain involving his left foot. The pain involves the lateral aspect of the foot as well as the sole of his foot. He states he has a constant dull pain aggravated with weight bearing activities. When he walks, he walks with his left foot for lack of push-off. In fact, during stance phase, his left heel is the only aspect that touches the ground. He indicates that he no longer has change in the coloration of his skin. Weather has no affect upon his pain. The pain stays in his left foot area with no radiation. He has noticed hypersensivity to touch involving the sole of his left foot.
Walking is limited to 15 minutes. He is independent with activities of daily living and is able to drive a car.
* * *
Based on my examination, I believe Mr. Conn has reached maximal medical improvement for the allowed conditions in this claim. His degree of permanent impairment, using the AMA Guides, FourthEdition, is best described by using Table 36 in regard to gait derangement. He would have a 15% whole person impairment. He would have a condition similar to a person who has an antalgic limp related to arthritis (his is related to soft tissue trauma) and I believe he will need a cane for distance walking to make him safe.
This impairment rating also takes into effect his hypersensitivity involving the left and lateral plantar nerves that I believe is directly related to the injury in question.
He is unable to perform his former position of employment at this time as a temporary worker doing labor activities. He [sic] only work he could perform would be sedentary work activities.
(Emphasis sic.)
 {¶ 26} 7. Dr. Koppenhoefer completed an occupational activity assessment form dated January 12, 2001. The form asks the examining physician to indicate by check-mark the claimant's physical capacity in certain occupational activities throughout the day. On the form, Dr. Koppenhoefer indicated that relator's ability to sit is "unrestricted." His ability to stand is "0-3 HRS." His ability to walk is "0-3 HRS." His ability to lift or carry up to ten pounds is "3-5 HRS." His ability to lift or carry from ten to 20 pounds is "0-3 HRS." Relator cannot lift or carry above 20 pounds.
 {¶ 27} 8. The commission requested an employability assessment report from William H. Hyde, a vocational expert. The Hyde report, dated February 9, 2001, responds to the following query:
Based on your separate consideration of reviewed medical and psychological opinions regarding functional limitations which arise from the allowed condition(s), identify occupations which the claimant may reasonably be expected to perform, immediately and/or following appropriate academic remediation.
 {¶ 28} Indicating acceptance of Dr. Koppenhoefer's report and responding to the above query, Hyde lists the following "employment options":
Immediate: Taxicab Dispatcher; Stuffer; Sorter; Final Assembler; Inspector, Eyeglass Frames; Machine Engraver I; Order Clerk, Food Beverage; Service Clerk; Microfilming Document Preparer.
Following remediation to bring all RMLs up to USDOL = 3: Pari-mutual Ticket Checker; Telephone Solicitor; Surveillance System Monitor.
 {¶ 29} Under "Effects of Other Employability Factors," Hyde answers three questions as follows:
[One] Question: How, if at all, do the claimant's age,education, work history, or other factors (physical,psychological, and sociological) affect his/her ability to meetthe basic demands of entry level occupations?
 Answer: Age: Will likely affect ability to obtain employment due to reduced marketability, age discrimination. May affect employability due to the need to take more time to learn new tasks and perform them safely. Ability to maintain physical and mental stamina for a full work week and adaptability to changes in work tasks or the work environment may be more difficult.
Education: Lack of a GED will make it more difficult for claimant to obtain work, but the 5th grade level is adequate enough to meet the basic demands of a number of entrylevel jobs, primarily unskilled. On the original IC-2, claimant reports he can do basic math and can read and write, but not well.
Work History: May reflect limited adaptation to clerical, retail, and service-oriented work tasks or settings. Claimant's work history is long, with varied and temporary jobs. He has primarily performed semi-skilled work, indicating an ability to develop skills necessary to perform a number of entry level sedentary and light occupations.
Other: * * * Unrelated factors/conditions from medical history include hernia repair, colon surgery, and eye surgery.
* * * Other than Adjusted Worker Trait Profile from work history, there is no basis to find that the claimant does not possess at least average form perception, clerical perception, finger dexterity, and color discrimination.
[Two] Question: Does your review of back ground dataindicate whether the claimant may reasonably develop academic orother skills required to perform entry level Sedentary or Light jobs?
 Answer: Claimant has demonstrated the ability to develop academic or other skills required to perform a number of entry-level Sedentary or Light jobs via work history. * * *
[Three] Question: Are there significant issues regardingpotential employability limitations or strengths which you wishto call to the SHO's attention? Answer: Strengths:
* * * Claimant has a long work history, primarily as a cab driver, with a number of other varied and temporary jobs, indicating an ability to adapt to different work tasks and settings.
* * * The fact that claimant returned to work after being retired for seven years suggests that he is interested in and/or motivated to continue working despite his age.
Limitations:
* * * Claimant's age of 75 years may prove to be a significant barrier to obtaining reemployment.
* * * Claimant has a marginal education with no GED.
* * * Claimant's capacity to adapt to unfamiliar clerical, retail, or service-oriented work tasks and settings may deserve some consideration.
* * * Dr. Kopenhoefer [sic] notes that a non-allowed condition of a right rotator cuff tear would prevent claimant from reaching with the right shoulder.
Additional Note:
Discrepancies should be noted between the claimant's completion of the original IC-2 (07/17/00) and a later abbreviated version (10/10/00) indicating changes that imply greater limitations or lesser skills, i.e., 1) as to whether he had filed for SSDI benefits, from "yes" to "no"; 2) as to level of grade completed, from "5th" to "2nd"; 3) as to academic abilities, from "can do basic math" and "can read and write, but not well" to "cannot read, write, or do basic math["]; 4) as to indication of interest in rehabilitation services, from no indication to "no"; 5) as to whether he uses a cane, from "no" to "yes"; [6]) as to changes in basic duties in Job Title No. 4 — from "very little" reading/writing to "none", and from "1-7" people supervised to "N/A".
(Emphasis sic.)
 {¶ 30} Under "Employability Assessment Database," the Hyde report states:
* * * Work History:
 Job Title * * * Skill Level
Machine Operator II * * * Semi-skilled Drapery Hanger * * * Skilled Cab Driver * * * Semi-skilled
 Strength Level Dates
 [Machine Operator] Medium 8/99-1/00; 8/86-8/87 [Drapery Hanger] Medium 8/87-7/92 [Cab Driver] Medium 1968-1986
 * * * Education History:
 Highest Grade Completed: 5th grade (revised App indicates 2nd grade) Date of Last Attendance: 1936 H.S. Graduate: No GED: No Vocational Training: None ICO Educational Classification: Marginal education (USDOL = 2)
(Emphasis sic.)
 {¶ 31} 9. Minute Men requested an employability assessment report from Caroline Wolfe, a vocational expert. The Wolfe report, dated December 4, 2000, states:
Mr. Conn has permanent limitations that prevent him from standing and walking for a significant period. However, his physician believes he can work with specified restrictions. He has no upper extremity restrictions, and he can lift up to 20 pounds occasionally. There are driving and assembly jobs that he should be able to perform in a seated position.
 {¶ 32} 10. Following a June 27, 2001 hearing, a staff hearing officer ("SHO") issued an order denying relator's PTD application. The SHO's order states:
The Staff Hearing Officer finds that claimant's condition has become permanent and that he is unable to return to his former position of employment as a temporary worker in a factory position due to allowed conditions in claim.
Dr. Koppenhoefer, physical medicine and rehabilitation specialist, examined the claimant at the request of Industrial Commission on 1-12-01. Dr. Koppenhoefer opined that the claimant would be capable of sedentary work activities. Dr. Koppenhoefer, opined in his Occupational Activities Assessment, that [the] claimant is unrestricted in his sitting and in his handling (seize, hold, grasp, turn) of objects. Dr. Koppenhoefer opined that [the] claimant can stand and walk 0-3 hours each in an eight hour work day. Dr. Koppenhoefer further opined that the claimant can lift up to 10 pounds for 3-5 hours in an eight hour work day and claimant can lift 10 to 20 pounds for 0-3 hours in an eight hour work day. Dr. Koppenhoefer further opined that the claimant can reach overhead and can reach at waist level on an unrestricted basis.
The Staff Hearing Officer finds that the capabilities provided by Dr. Koppenhoefer in his medical report are the capabilities the claimant has as a result of recognized conditions in claim.
The Staff Hearing Officer finds that [the] claimant is 75 years old who has a limited education, having completed the second grade in school. The Staff Hearing Officer finds that the claimant has worked a variety of jobs including machine operator II, drapery worker-factory worker, and farm laborer.
Mr. William Hyde, vocational expert for the Industrial Commission, opined in a report dated 2-9-01 that the claimant has demonstrated the ability to develop academic or other skills required to perform a number of entry-level sedentary or light jobs via work history. Mr. Hyde opined that claimant's long work history, primarily as a cab driver, with a number of other varied and temporary jobs, indicates an ability to adapt to different work tasks and settings which is a vocational strength. Mr. Hyde opined that [the] fact that claimant returned to work after being retired for seven years suggests a desire, interest and motivation to continue working despite his age. Mr. Hyde opined in claimant's adjusted worker trait profile that claimant rated average in categories of general learning ability, verbal aptitude and numerical aptitude. Mr. Hyde opined when accepting the residual functional capacities of Dr. Koppenhoefer, the claimant has immediate employment options including but not limited to jobs as taxi cab dispatcher, stuffer, sorter, final assembler, inspector, eyeglass frames, order clerk, food and beverage and service clerk.
Ms. Caroline Wolfe, vocational expert, opined in a report dated 12-4-00 that with claimant's physical capacities, he can perform driving and assembly jobs in a seated position.
The Staff Hearing Officer finds despite claimant's age and limited education that given the claimant's medical capacities due to allowed conditions and his varied work history, the claimant is able to engage in sustained remunerative employment and is not permanently and totally disabled.
All medical reports and vocational reports on file were reviewed and considered.
This order is based on reports of Dr. Koppenhoefer, Mr. Hyde and Ms. Wolfe.
 {¶ 33} 11. On July 15, 2003, relator, Thomas Conn, filed this mandamus action. Conclusions of Law:
 {¶ 34} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 35} For its threshold medical determination, the commission, through its SHO, relied exclusively upon the report of Dr. Koppenhoefer who found that the industrial injury prevents relator from returning to his former position of employment, but does not prevent his employment in sedentary occupations. Relator does not challenge the commission's determination that the industrial injury medically permits the performance of sedentary employment, nor does relator challenge the commission's exclusive reliance upon Dr. Koppenhoefer's reports. However, relator does challenge the commission's consideration of the nonmedical factors.
 {¶ 36} With respect to the commission's consideration of the nonmedical factors, the order states reliance upon the vocational reports of William Hyde and Caroline Wolfe. However, most of the commission's discussion of the nonmedical factors involves references to the Hyde report. The order does not indicate that any portion of the Hyde report was rejected. The order seems to indicate that, while portions of the Hyde report were referenced in the order, the entire report was accepted and relied upon.
 {¶ 37} While the commission is free to accept vocational evidence, expert vocational opinion is not critical or even necessary to the adjudication of PTD applications because the commission is the expert on nonmedical factors. State ex rel.Jackson v. Indus. Comm. (1997), 79 Ohio St.3d 266, 271.
 {¶ 38} Here, the commission chose to heavily rely upon the Hyde report in the analysis of the nonmedical factors. Given this scenario, review of the commission's order logically begins with a review of the Hyde report which this magistrate finds to be significantly flawed.
 {¶ 39} As previously noted, in answer to question one under "Effects of Other Employability Factors," Hyde wrote:
Work History: May reflect limited adaptation to clerical, retail, and service-oriented work tasks or settings. * * *
(Emphasis omitted.)
 {¶ 40} In answer to question three, the above finding regarding adaptation to clerical, retail, and service-oriented work tasks is repeated. Under "Limitations," Hyde states:
* * * Claimant's capacity to adapt to unfamiliar clerical, retail, or service-oriented work tasks and settings may deserve some consideration.
 {¶ 41} In the magistrate's view, relator correctly points out that Hyde's findings are inconsistent with most of the employment options listed as being compatible with Dr. Koppenhoefer's medical restrictions. Clearly, an order clerk or a service clerk job must be viewed as clerical and thus involves some aspects of "clerical, retail, or service-oriented work tasks." Moreover, several other listed employment options seem to involve what Hyde describes as "service-oriented work tasks."
 {¶ 42} The commission, through its SHO, relied upon Hyde's listing of employment options in determining that relator is able to perform sustained remunerative employment. Because the above analysis strongly suggests that Hyde's list of employment options is seriously flawed, the commission's nonmedical analysis must be viewed as similarly flawed. Because the Hyde report is seriously flawed, the commission must be ordered to eliminate the report from further evidentiary consideration and to obtain a new employability assessment report from one of its experts.
 {¶ 43} There is an additional problem with the commission's reliance upon the Hyde report. Hyde makes it clear that his vocational analysis is premised upon the presumption that relator's educational level is "5th grade." However, the SHO specifically found that relator "completed the second grade in school."
 {¶ 44} Ohio Adm. Code 4121-3-34 sets forth the commission's rules applicable to the adjudication of PTD applications. Ohio Adm. Code 4121-3-34(B) sets forth definitions applicable to the adjudication of PTD applications.
 {¶ 45} Ohio Adm. Code 4121-3-34(B)(3) captioned "vocational factors" states:
(b) "Education" is primarily used to mean formal schooling or other training which contributes to the ability to meet vocational requirements. The numerical grade level may not represent one's actual educational abilities. If there is no other evidence to contradict it, the numerical grade level will be used to determine educational abilities.
* * *
(ii) "Marginal education" means sixth grade level or less. A claimant will have ability in reasoning, arithmetic, and language skills which are needed to so simple unskilled types of work. Generally, formal schooling at sixth grade level or less is marginal education.
(iii) "Limited education" means seventh grade level through eleventh grade level. Limited education means ability in reasoning, arithmetic and language skills but not enough to allow a claimant with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. Generally, seventh grade through eleventh grade formal education is limited education.
 {¶ 46} While fifth grade level or second grade level places relator's educational status in the "marginal" category, there could, nevertheless, be a vocationally significant difference between the two levels. Here, the commission determined that relator's educational status was at the second grade level, yet it relied upon the Hyde report which presents a vocational analysis premised upon the fifth grade level. The SHO's order fails to disclose whether or not the SHO was even aware of this discrepancy. In the magistrate's view, this discrepancy between the SHO's finding of the educational status and the one chosen by Hyde creates another serious flaw in the commission's order.
 {¶ 47} Relator also correctly points out that the commission's order incorrectly refers to relator's "limited education." However, given the above noted flaws, this court need not determine whether the order's repeated reference to a "limited education," by itself, would compel the issuance of a writ of mandamus.
 {¶ 48} The magistrate makes an additional observation regarding the third to last paragraph of the commission's order, which again states:
The Staff Hearing Officer finds despite claimant's age and limited education that given the claimant's medical capacities due to allowed conditions and his varied work history, the claimant is able to engage in sustained remunerative employment and is not permanently and totally disabled.
 {¶ 49} The above-quoted paragraph attempts to weigh age, education and work history. It seems to suggest that age and education were simply accepted as negative employment factors, but, that, relator's so-called "varied work history" was found to be a positive factor that outweighs the negative impact of the other two factors. Here, the magistrate will not address the question of whether this brief statement, in the context of the commission's order, is sufficient to explain away the negative impact of relator's age and education. Because the Hyde report is seriously flawed, this court need not address other issues that relator presents.
 {¶ 50} With respect to relator's request for a full writ of mandamus under State ex rel. Gay v. Mihm (1994),68 Ohio St.3d 315, the magistrate observes that Dr. Koppenhoefer opined that the industrial injury produces a 15 percent whole person impairment. In State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693, 697, the court states:
* * * [I]n cases where Gay relief has been recommended, the commission's order has coupled vocationally unfavorable evidence with medical evidence that assessed a relatively high degree of physical impairment. * * *
 {¶ 51} In Domjancic, the commission had relied upon the report of Dr. Gonzales who found that Mr. Domjancic had a 16 percent partial impairment of the whole person. Because of this, the Domjancic court found that Mr. Domjancic did not fit the profile for a claimant entitled to Gay relief.
 {¶ 52} Given that Dr. Koppenhoefer concluded in this case that the industrial injury produces only a 15 percent whole person impairment, the magistrate concludes, based onDomjancic, that relator does not fit the profile of Gay
relief.
 {¶ 53} Accordingly, it is the magistrate's decision that this court issue a limited writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its SHO's order of June 27, 2001 denying relator's PTD application, to eliminate the Hyde report from further evidentiary consideration, and to obtain a new employability assessment report from one of its vocational experts, and to thereafter issue a new order that either grants or denies the PTD application.
 /s/ Kenneth W. Macke 
KENNETH W. MACKE MAGISTRATE.